UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| **HEATHER MARIE FISK,** ) | |
| ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | NO. 5:23-CV-00261-MAS |
| ) | |
| **MARTIN O'MALLEY,** ) | |
| *Commissioner of SSA,* ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Heather Marie Fisk appeals the Commissioner's denial of her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The Court considers the parties' competing Motions for Summary Judgment. [DE 11; DE 13]. For the reasons discussed below, the Court finds that the Administrative Law Judge's ("ALJ") decision is supported by substantial evidence and that the Commissioner's final decision is hereby **AFFIRMED**.

**I.   FACTS AND PROCEDURAL HISTORY**

Fisk filed an application for DIB on March 1, 2021. [Administrative Transcript[1] ("TR") at 194-96]. Fisk alleges her disability began on January 1, 2018.[2]

---

[1] The Administrative Transcript is docketed at DE 10. The Court shall utilize the pagination generated by the Commissioner when referencing the transcript.

[2] Fisk previously filed a claim that was denied by an ALJ on April 29, 2020 (Tr. 72-88). Plaintiff appealed the decision to the Appeals Council, which denied her request for review (Tr. 89-94). Plaintiff did not further appeal that decision. Therefore, the decision dated April 29, 2020, remains a

1

[TR at 95]. Her claims were denied initially on August 16, 2021, and upon reconsideration on October 29, 2021. ALJ Richard Hopkins conducted a telephone hearing on June 22, 2022. [TR at 38-67]. ALJ Hopkins issued an unfavorable decision on September 16, 2022. [TR at 14-37]. The Appeals Council denied a Request for Review of a Hearing Decision/Order on July 20, 2023. [TR at 1-6].

On the alleged date that her disability began, she was 32 years old. [TR at 29]. Fisk has past relevant work as a bank teller, sales attendant, and bartender. [TR at 225]. Fisk alleged disability due to spinal lumbar stenosis, migraines, "rods and pins," comprised nerves, hydantoins supravital, kidney issues, asthma, depression, anxiety, and sleep issues. [TR at 223].

A.   **MEDICAL HISTORY**

A brief summary of the pertinent medical records is as follows:

Kenneth Moy, D.O., treated Fisk for back pain and migraines from May through December 2020. Dr. Moy performed trigger point injections and a bilateral occipital nerve block (TR at 411 and 413) and a epidural steroid injection (TR at 398). By December 2020, Fisk reported to Dr. Moy that her migraines had improved but she was experiencing numbness and tingling in both legs. [TR at 375].

Fisk sought treatment on March 20, 2020, August 10, 2020, and October 20, 2020, at Missouri Delta Medical Center for cysts in her groin area. [TR at 380, 392, and 415]. She was prescribed antibiotics each time.

---

final decision of the Commissioner and the relevant period under review for the current claim began on April 30, 2020. See 42 U.S.C. § 405(g) and (h); 20 C.F.R. §§ 404.955(b), 404.981, 422.210.

On December 7, 2020, Fisk began treating with Enrigue Sumire, M.D., for episodic migraines. [TR at 368]. Dr. Sumire increased Fisk's gabapentin, prescribed Maxalt, and continued her prescription of Topamax. [Tr. at 370-371]. Dr. Sumire's examination findings were all normal but for decreased reflexes in Fisk's knees. [TR at 370]. On December 28, 2020, Dr. Sumire saw Fisk for her headaches, which had improved to from once or twice per week at the beginning of the month to only once per week. [Tr. at 461]. By February 2021, Fisk reported to Dr. Sumire that her headaches had improved significantly, but that she had "chronic low back pain with radiation to both lower extremities." [TR at 482]. Frisk stated this pain was accompanied by weakness in her left leg and "constant paresthesias and numbness all over on both legs." [TR at 482]. Dr. Sumire continued Maxalt, increased gabapentin, and added baclofen. [TR at 484]. Fisk followed up with Dr. Sumire on March 3, 2021, and again on April 21, 2021, both times reporting increasing frequency of headaches and continued issues with back and leg pain. [TR at 355 and 624].

In April and June 2021, Fisk saw Dr. Moy for her back pain and bilateral leg pain. [TR at 564 and 571]. At the April visit she reported that her migraines were "doing better." [TR at 572]. Dr. Moy observed Fisk had a normal gait, had full range of motion and strength in her upper extremities, had limited range of motion in her lumbar spine, had moderate knee pain, and had a positive straight leg raise on the right. [Tr. 565-66, 572].

Fisk returned to Dr. Sumire in June 2021 for Botox injections to treat her migraines. [TR at 612]. At a follow-up appointment in July, Fisk reported "significant

3

improvement in headache severity and intensity" (Tr. 657). She stated that her headaches decreased from 16 to eight a month, and she was "happy" with the results (Tr. 658). Fisk also received treatment from Dr. Moy in July, at which time he observed largely normal findings on examination, other than decreased range of motion in the lumbar spine and positive straight leg raises on the right (Tr. 559-60). In August 2021, Dr. Moy reviewed Fisk's spinal MRI, noting "stable lumbar degenerative changes" and "stable postsurgical changes" in her spine (Tr. 576-78).

In July 2021, Fisk saw Dennis Reed, P.A., about a boil on her leg/groin area. (Tr. at 652). Mr. Reed diagnosed hidradenitis suppurativa and prescribed clindamycin. (Tr. at 653).

Fisk continued to follow up with Dr. Moy throughout the fall of 2021 and into 2022, receiving several periodic additional Botox treatments for headaches as well as injections for back pain in October 2021 and February 2022. [TR at 600, 777, and 789-94]. Dr. Moy saw Fisk on May 17, 2022, at which time Fisk reported that the prior injection only helped about "10% for 1 week" and stated she had "low back pain radiating down [her] right leg[.]" [TR at 1041]. Fisk described the pain as "moderate" and exacerbated by moving, standing, and walking. [TR at 1041]. Dr. Moy noted some limited range of motion in Fisk's lumbar spine, mild edema in her lower extremities, and a positive straight leg raise with radiating signs, but an otherwise normal examination. [TR at 1042]. Dr. Moy changed Fisk's pain medication at that visit.

4

The same day, Fisk saw dermatologist Alison Sindle, M.D. for a check of hidradenitis suppurativa. (Tr. at 1072). Upon exam, Dr. Sindle noted that Fisk had "erythematous to violaceous nodules of bilateral axillae intermixed with open comedones and scarring." (Tr. at 1072). Dr. Sindle continued her medications and started her on a Hibiclens 4% wash once weekly. [TR at 1073].

B.     MEDICAL OPINIONS

Dr. Sumire completed Medical Source Statement Physical ("MSSP") in April 2021. [Tr. 519-21]. Dr. Sumire noted radiculopathy, chronic low back pain, migraines, and depression. [TR at 519]. When asked to identify clinical findings and objective signs, he noted physical examination findings of bilateral hip flexion weakness 4+/5, right dorsiflexion weakness 4/5, unsteadiness, and inability to complete tandem gait. [TR at 519]. He also noted results of an EMG study indicating chronic denervation changes on the L5 myotome. [TR at 519]. Dr. Sumire opined that Fisk had lifting, carrying, and postural limitations, and that she could sit for one hour at a time (two hours total), stand 15 minutes at one time, and needed to shift positions at will. [TR at 519]. Dr. Sumire further opined that Fisk would need daily unscheduled breaks, would be off task 15% of the workday, and would miss work or leave early more than four days per month. [TR at 521].

Non-examining state agency medical consultant Chukwudi Nwodo, M.D., reviewed the record on July 13, 2021, and found that Fisk could perform the exertional demands of light work, as well as sit about six hours in an eight-hour workday. [TR at 100]. He found that she could never climb ladders, ropes, or scaffold, could perform all other postural activities occasionally, and had additional environmental limitations,

5

including avoiding concentrated exposure to extreme temperatures, noise, vibrations, fumes, and hazards. [TR at 101].

On reconsideration, non-examining state agency medical consultant Dennis McGraw, M.D., concurred with Dr. Nwodo's findings. [TR 112-14].

**C.  THE ALJ'S OPINION**

The ALJ found that Fisk had the following severe impairments: anxiety disorder, depressive disorder, obesity, status post lumbar fusion, migraines, degenerative joint disease, and asthma. [TR at 20].

The ALJ ultimately determined that Fisk had the RFC to perform sedentary work as defined by 20 C.F.R. § 404. 1567(a), except as sedentary was defined in the Selected Characteristics of Occupations appendix C paragraph 1, sitting most of the time with occasional standing or walking for brief periods, with the following limitations:

> She can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. The claimant should avoid concentrated exposure to pulmonary irritants, bright lights, and avoid concentrated exposure to extreme heat. The claimant can work in no more than a moderate noise environment or noise level 3 as defined in the SCO. She should avoid all exposure to unprotected heights. She is able to learn, remember, and carry out simple, routine tasks; use reason and judgement to make simple, routine work-related decisions; work at an appropriate and consistent pace when performing simple, routine tasks; and, complete simple, routine tasks in a timely manner. The claimant must have only gradual changes in work setting and duties. Her job responsibilities must not require more than incidental contact with the public, only occasional contact with coworkers, and no tandem tasks.

[TR at 23]. Based on her RFC, the ALJ determined Fisk was not disabled and there was work in the national economy she could perform despite her limitations. [TR at 30].

## II. STANDARD OF REVIEW

Judicial review of the ALJ's decision is deferential and strictly limited. The Court's sole task is to determine whether the ALJ applied the correct legal standards and whether the ALJ's factual findings are supported by substantial evidence in the record. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "The substantial-evidence standard allows considerable latitude to administrative decisionmakers" and "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

The Court must make its substantial evidence determination based on the record as a whole. *Cutlip*, 25 F.3d at 286. However, the Court need not comb the entire record in search for facts supporting under-developed arguments. [*See* General Order No. 13-7 (citing *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491

7

(6th Cir. 2006)) ("The parties shall provide the Court with specific page citations to the administrative record to support their arguments. The Court will not undertake an open-ended review of the entirety of the administrative record to find support for the parties' arguments.")]. Further, the Court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Court must affirm the ALJ's decision if there is substantial evidence in the record to support it, even if substantial evidence might also support the opposite conclusion. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 393 (6th Cir. 2004); *Mullen*, 800 F.2d at 545. Likewise, the Court must affirm any ALJ decision supported by substantial evidence, even if the Court itself might have reached a different result. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

For context, the Court briefly outlines the ALJ's five-step sequential analysis. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 404.1520(a)(4). In the first step, the ALJ decides whether the claimant is performing substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). In the second step, the ALJ determines whether the claimant suffers from any severe impairments. *Id.* at § 404.1520(a)(4)(ii). In the third step, the ALJ decides whether such impairments, either individually or collectively, meet an entry in the Listing of Impairments. *Id.* at § 404.1520(a)(4)(iii). In the fourth step, the ALJ determines the claimant's RFC and assesses whether the claimant can perform past relevant work. *Id.* at § 404.1520(a)(4)(iv). Finally, in the fifth step, the burden shifts to the

8

Commissioner. The ALJ must consider and decide whether there are jobs that exist in significant numbers in the national economy that the claimant could perform based on RFC, age, education, and work experience. *Id.* at § 404.1520(a)(4)(v). If the ALJ determines at any step that the claimant is not disabled, the analysis ends there. *Id.* at § 404.1520(a)(4).

## III. ANALYSIS

Fisk argues first that the ALJ's decision is not supported by substantial evidence because he failed to articulate how the factor of consistency was assessed in considering Dr. Sumire's opinion. [DE 11 at Page ID# 1102]. Second, Fisk argues that the ALJ failed to properly evaluate Fisk's medically determinable impairment of hidradenitis suppurativa at steps two and four.

### A. CONSISTENCY

Fisk claims "the ALJ failed to explain how he considered the regulatory factor of consistency when finding Dr. Sumire's opinion unpersuasive" because "Dr. Sumire was Fisk's treating doctor and completed a Medical Source Statement Physical" that identified the various diagnoses and limitations listed *infra*. [DE 11 at Page ID# 1108]. Fisk argues the ALJ failed to articulate how the factor of consistency was considered. [TR at 29]. Regarding Dr. Sumire's opinion, the ALJ stated:

> Dr. Sumire's opinion was somewhat internally inconsistent, noting the claimant could perform lifting consistent with the light exertional level, but less than the sedentary level of sitting. Further, his opinion was not supported by his treatment records, which did not document extreme findings or pain consistent with his opinion that the claimant was unable to sit for a full day, would take unscheduled breaks, would be off task, or miss days due to her conditions[.]

9

[TR at 29].  The Commissioner concedes that "[o]n its face, this assessment would appear to go more toward supportability." [DE 13 at Page ID# 1128].  However, the Commissioner contends that the Court should affirm the ALJ's decision because the ALJ "actually cited to medical findings provided by other medical sources such as Dr. Moy and Plaintiff's primary care provider" and "the remainder of the ALJ's decision provides further indication that the ALJ did not think Dr. Sumire's opinion was consistent with other evidence." [DE 13 at Page ID# 1128].  The Court agrees with the Commissioner.

The ALJ's decision sufficiently provided an explanation allowing the Court to undertake a meaningful review of his consideration of the consistency factor.  *Blakley . Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009).  Unlike *Terjune v. Kijakazi*, 2022 WL 2910002 (July 22, 2022), cited by Fisk, the ALJ here did "indicate what objective medical findings in the record he considered and [ ] explained how he considered other evidence in the record when making his determination." Specifically, the ALJ pointed to Dr. Sumire's finding that Fisk "could perform lifting consistent with the light exertional level, but less than the sedentary level of sitting" as inconsistent.  [TR at 29].  The ALJ describes his consistency findings but does not necessarily use those words.  Such specificity or magical incantation of words is not required.  *Cf. Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) (unpublished) (upholding an ALJ's step three finding where the ALJ "made sufficient factual findings elsewhere in his decision to support his conclusion at step three").  In making this determination, the ALJ stated that Dr. Sumire's "opinion was not

supported by his treatment records, which did not document extreme findings or *pain consistent with his opinion* that the claimant was unable to sit for a full day, would take unscheduled breaks, would be off task, or miss days due to her conditions[.]" [TR at 29] (emphasis added). Thus, the ALJ specifically considered Dr. Sumire's objective findings in his treatment records, concluding that they were inconsistent with his later-rendered opinion of Fisk's functional limitations. Though the ALJ could have drafted his opinion with more detail or precision or with additional citations to the medical evidence, he "is not required to mention every piece of evidence but must [only] provide an 'accurate and logical bridge' between the evidence and the conclusion that the claimant is not disabled[.]" *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). That is what the ALJ did here, and the Court finds it was sufficient to satisfy the requirements of § 404.1520(c)(2) and therefore his decision was supported by substantial evidence.

**B.    CONSIDERATION OF HIDRADENITIS SUPPURATIVA AT STEPS TWO AND FOUR**

At step two of the analysis, the ALJ determined that Fisk's hidradenitis suppurativa was "non-severe" because it "resulted in not more than minimal functional impairment for 12 months as the claimant did not see an dermatologist until recently and there was no indication that any of the lesions persisted or resulted in functional limitations consistent with her allegations[.]" [TR at 20]. "An impairment or combination of impairments is found 'not severe'" when the medical evidence "establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." Social Security Ruling 85-28, 1985 WL 56856, at *2.

11

At the hearing, Fisk described suffering from large, (up to) softball-sized boils on her underarms that make ooze, puss, and swell, and make it difficult to move or raise her arms. [TR at 48-52]. Although Fisk's brief details her medical treatment for hidradenitis suppurativa, for several paragraphs, the reality is that she only sought treatment for the condition five times in three years, all three times the treatment was conservative, including antibiotics or washes, and there were no complaints or evidence in the medical records that the hidradenitis suppurativa affected Fisk's functioning. [TR at 380, 392, 629, 652, and 814]. Importantly, there was no medical evidence that the hidradenitis suppurativa affected her ability to reach her arms, and she only sought treatment for the condition in her underarm one time. [TR at 629].

Ultimately, the fact that the ALJ considered Fisk's hidradenitis suppurativa non-severe is "legally irrelevant" because the ALJ found that Fisk had some severe impairment (see *supra*) that passed the second step of the analysis. *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008).

> According to the regulations, upon determining that a claimant has one severe impairment, the Secretary must continue with the remaining steps in his disability evaluation as outlined above. . . . Since the Secretary properly could consider claimant's [non-severe] condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's [non-severe] condition constituted a severe impairment could not constitute reversible error.

*Maziarz v. Sec. of Health & Human Ser.*, 837 F.2d 240, 244 (6th Cir. 1987). Contrary to Fisk's claims, the ALJ did consider the non-severe impairments, including hidradenitis suppurativa, in the RFC decision. The ALJ's decision specifically states

12

he "considered all symptoms" to the extent they were consistent with objective medical and other evidence. [TR at 23]. This included Fisk's reports of her difficulty reaching overhead and "horrible pain" due to her skin disease and was "unable to lift her arms or wear pants due to her boils" nor could she lift a gallon of milk. [TR at 25].

Nonetheless, there was, as mentioned, no objective medical evidence consistent with these subjective complaints. Therefore, the ALJ did not err in adopting an RFC that did not including reaching limitations. *See Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) (explaining that a claimant bears the burden of proving his lack of residual functional capacity). Fisk has not provided any argument otherwise. Therefore, the Court finds this portion of the ALJ's decision should be affirmed.

## IV. CONCLUSION

Fisk appealed the Commissioner's final decision finding that she is not disabled. While she contends that the ALJ's finding was not supported by substantial evidence due to the RFC's omission of any limitation relating to her hidradenitis, and that the ALJ did not properly articulate the consistency factor as to Dr. Sumire's opinion, the Court disagrees, and finds that the ALJ's omission was not error, and the decision was ultimately supported by substantial evidence. Having fully considered the matter, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that:

1. The final decision of the Commissioner is hereby **AFFIRMED**;
2. Defendant's Motion for Summary Judgment is **GRANTED**; and


3. Plaintiff's Motion for Summary Judgment is **DENIED**.

A separate judgment will follow.

Entered this 13th of September, 2024.

*[Signature: Matthew A. Stinnett]*

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY